UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPY PHONE LABS LLC,<br><br>      Plaintiff,<br><br>    v.<br><br>MONAPP CALABS LIMITED and ANDREI CIUCA, d/b/a SPY-PHONE-APP.COM and SPAPPMONITORING.COM,<br><br>      Defendants. | Case No.:<br><br>ECF Case<br><br>**VERIFIED COMPLAINT** |

Plaintiff Spy Phone Labs LLC ("Plaintiff"), by its undersigned attorneys, for its verified complaint in this action against defendants Monapp Calabs Limited ("Monapp") and Andrei Ciuca, d/b/a <spy-phone-app.com> and <spappmonitoring.com> ("Ciuca" and, collectively, "Defendants"), alleges as follows:

INTRODUCTION

1. This action asserts claims under the Lanham Act arising from infringement and false designation of origin by Defendants of Plaintiff's registered trademark SPY PHONE® (the "Mark"), as well as cybersquatting by the bad faith registration and use of a domain name that is identical to Plaintiff's Mark.

2. This action also asserts a claim for unfair competition under New York law.

3. Plaintiff seeks a temporary restraining order as well as preliminary and permanent injunctive relief to prevent future infringement and other misconduct by Defendants, with such relief to include restraints on Defendants that prevent them from transferring domain name registrations, and the disablement of websites that Defendants are using to infringe upon Plaintiff's Mark, during the pendency of this action.

4. In addition, Plaintiffs seek disgorgement of all profits arising from Defendants' infringing activities or, in the alternative, statutory damages, as well as reasonable attorneys' fees, disbursements and the costs of this action.

## PARTIES

5. Plaintiff Spy Phone Labs LLC is a New York limited liability company with its principal place of business in 680 Route 211 East, Suite 3B, Middletown, New York.

6. Upon information and belief, defendant Monapp is a limited liability company formed under the laws of Cyprus with a principal place of business at Agiou Ilarionos 11, Mediterranean Homes, Flat 31, Pervolia, Larnaca, Cyprus.

7. Upon information and belief, defendant Ciuca is a natural person and citizen of Romania residing at Bld. Constantin Brancoveanu, NR 12, Bloc B4, AP 20, Bucharest 4th District, 44325, Romania.

8. Upon information and belief, Monapp is wholly-owned, managed and controlled by Ciuca.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 insofar as this action asserts claims arising under federal law, namely the Lanham Act. This Court has supplemental jurisdiction over state and common law claims pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Monapp under N.Y. C.P.L.R. § 302 because Monapp: (a) has transacted business in New York via an interactive website that gives rise to the claims asserted herein; (b) has contracted for goods or services

in New York; and/or (c) has committed tortious acts (trademark infringement and cybersquatting) outside New York, that caused injury within this State, with the expectation that its conduct would have consequences within this State, and derives substantial revenue from interstate commerce.

11. This Court has personal jurisdiction over Ciuca in his capacity as an officer or managing agent of Monapp under N.Y. C.P.L.R. § 302 for the same reasons as stated for Monapp and/or because Ciuca supervises and controls the activities of Monapp that infringe on Plaintiff's Mark and give rise to the claims asserted herein.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and/or § 1391(b)(3) because if there is no district in which an action may otherwise be brought and Defendants are subject to this Court's personal jurisdiction with respect to this action.

## FACTS ALLEGED

### Plaintiff's Business and Mark

13. Plaintiff is the owner of the Mark SPY PHONE®, a standard character trademark, which is registered with the U.S. Patent and Trademark Office ("USPTO") under Registration Number 3948486 in International Class 09 for computer application software for mobile phones. (A copy of the registration for Plaintiff's Mark and recorded assignments establishing Plaintiff's ownership are attached as Exhibit 1.)

14. Plaintiff's Mark was first used in commerce on September 1, 2010.

15. Plaintiff's Mark is valid and subsisting.

16. Plaintiff's Mark is inherently distinctive.

17. Plaintiff's Mark has been in continuous use for more than five years since it was placed on the Principal Register maintained the USPTO, it is now classified as incontestable pursuant to Lanham Act § 8 & § 15, 15 U.S.C. §1058 & § 1065.

18. Plaintiff's Mark is also registered in several foreign countries, including, Turkey, Mexico, South Korea, Brazil and Australia under International Registration Number 1169007.

19. Plaintiff is also the registrant of the domain name <spyphone.com> (the "Domain"), which corresponds to Plaintiff's Mark.

20. Plaintiff is the owner of a software application (an "app") that can be downloaded on a mobile device ("Plaintiff's App") that operates on either the Android or IOS operating systems.

21. Plaintiff has used its Mark and the Domain to market and promote Plaintiff's App on the internet since at least September 1, 2010.

22. Plaintiff's App is what it commonly known as a "monitoring app."

23. When downloaded on a mobile device, Plaintiff's App transfers certain data from the device, such as GPS tracking data, contact lists and the names of other downloaded apps, to a secure server, where the data is stored and can be viewed.

24. Plaintiff's App is available only online, and can be downloaded through a website associated with the Domain or through app distribution platforms, the most popular and well-known of which are Google's Google Play and Apple's App Store.

25. Plaintiff's App is marketed and intended for strictly legitimate and lawful purposes, and is primarily promoted as a tool that parents or guardians of minor children can use to monitoring the location of and activities on a minor's mobile device.

26. Plaintiff's App complies with all federal and state data privacy laws.

27. In contrast to Plaintiffs' App, certain other app developers offer monitoring apps that, if downloaded on a mobile device without the user's knowledge, can be rendered undetectable and used to secretly acquire data from the device and/or to remotely operate certain functions, such as the camera and microphone, without the user's knowledge in order to spy on or stalking the user.  These apps are commonly known as "spyware" or "stalking apps."

28. To prevent Plaintiff's App from being used unlawfully as spyware or a stalking app, Plaintiff's App has a feature that causes an icon to appear on the device at regular intervals to alert the user that Plaintiff's App has been downloaded and is running on the device.

29. Plaintiff's App is a free download and free to use.

30. Plaintiff generates income from Plaintiff's App through online advertising at the website associated with the Domain ("Plaintiff's Website"), where users of Plaintiff's App must log on to view data that has been transferred from the device to the secure server via Plaintiff's App.

31. Since the amount of revenue earned from advertising on a website is based on the number visitors to the website, the more people that download and use Plaintiff's App, the more people that visit Plaintiff's Website, and the more advertising revenue that is generated by Plaintiff's App.

32. Between 2010 – 2020, Plaintiff's App was downloaded over four million times.

33. Most consumers that are looking for an app to download typically utilize an Internet search engine (such as Google) or a similar search function in an app distribution platform to locate what they are looking for.

34. Plaintiff and its predecessors-in-interest have expended substantial effort and resources on search engine optimization ("SEO") techniques to obtain top-ranked search results when consumers search for a monitoring app using the words "spy" and "phone," which are common terms that consumers use to such for monitoring apps.

Defendants' Unlawful Stalking App

35. Defendants are the developers of an app ("Defendants' App") that is marketed and promoted under the name "Spy Phone App" (the "Infringing Name").

36. Like Plaintiff's App, Defendants' App can be downloaded on a mobile device that operates on either the Android or IOS operating systems.

37. Defendants' App is a monitoring app that, when downloaded on a mobile device, transfers data from a mobile device to a secure server.

38. Defendants' App competes with Plaintiff's App because it has the same features and functions that are available on Plaintiff's App, including the ability to monitoring and store data from a mobile device.

39. Unlike Plaintiff's App, however, Defendants' App constitutes spyware and/or a stalking app because it has features that enable Defendants' App to become undetectable once downloaded on a mobile device, and if Defendant's App is downloaded on a mobile device without the user's knowledge, it can be used to secretly acquire private data from the device.

40. Defendants' App also has the ability to operate certain device functions, such as the camera and the microphone, secretly and remotely, so that it can be used to spy on or stalk the user by taking pictures or eavesdropping on conversations without the user's knowledge.

41. U.S. Developers of monitoring apps with functions and features similar to Defendants' App, which have the potential to invade someone's privacy and/or steal their private data without their knowledge, have been targeted by the Federal Trade Commission in an effort to stop spyware or stalking apps from being offered over the Internet. See, e.g. https://www.marketwatch.com/story/ftc-fires-first-salvo-against-apps-that-spy-on-your-spouse-and-facilitate-stalking-2019-10-23.

42. Defendants' App is free to download, but, after a three-day trial period, Defendants charge users a monthly subscription fee to use Defendants' App.

43. Upon information and belief, Defendants earn substantial revenues from the subscription fees generated by Defendants' App.

Defendants' Conduct Giving Rise To This Action

44. Plaintiff's predecessor-in-interest first started offering Plaintiff's App for download on Google Play, the most popular and well-known app distribution platform, in or around mid-2012.

45. On or around December 5, 2012, Ciuca registered the domain name <spy-phone-app.com> (the "Infringing Domain").

46. Upon information and belief, Ciuca registered the Infringing Domain name with knowledge of Plaintiff's App and Plaintiff's Mark and with the intent

to profit by diverting customers interested in Plaintiff's App to view and download Defendants' App.

47. Prior to June 2019, Defendants used a website associated with the Infringing Domain <spy-phone-app.com> (the "Original Website") to market and promote Defendants' App under the Infringing Name.

48. In June 2019, Plaintiff's predecessor-in-interest commenced an arbitration proceeding to challenge Ciuca's rights in the Infringing Domain and to compel the transfer of the Infringing Domain to the Mark holder.

49. In response, Defendants, or others acting in concert with them, established what is known as a "301 Redirect Link" to redirect the Internet traffic from the Infringing Domain and the Original Website to a new website (the "Current Website") associated with a new domain name <spappmonitoring.com> ("Current Domain"), which is the website that they currently used to promote and market Defendants' App.

50. Defendants' Current Website associated with the Current Domain prominently features the Infringing Name to promote, market and identify Defendants' App. (A copy of the homepage and other webpages from Defendants' Current Website, all of which contain the Infringing Name, are attached as Exhibit 2.)

51. Thus, while Defendants are not currently using the Infringing Domain in an open and notorious manner, they are still receiving the benefit of Defendants' use of the Infringing Domain to infringe on Plaintiff's Mark and compete unfairly with Plaintiff by driving Internet traffic to Defendants' Current Website.

52. Since August 2019, when Plaintiff's predecessor first discovered that Defendants' were using the Current Website associated with the Current Domain to

infringing on Plaintiff's Mark, Defendants have used the Infringing Name and the residual power of the Infringing Domain via the 301 Redirect Link to unfairly compete for the top-ranked search engine results in Google and other popular search engines for the search terms "spy phone" and "spyphone," and have prevented Plaintiff from leveraging its rights in the Mark to obtain the top-ranked results.

53. Defendants' use of the Infringing Name on Defendants' Current Website and the residual power of the Infringing Domain via the 301 Redirect Link causes consumer confusion between Plaintiff's App and Defendants' App.

54. Defendants' use of the Infringing Name on Defendants' Current Website and the residual power of the Infringing Domain via the 301 Redirect Link tarnishes Plaintiff's Mark through the promotion and marketing of an illegal stalking app.

<u>Defendants Have Targeted New York Consumers and Transacted Business in This State</u>

55. Defendants' Current Website is an interactive website through which consumers throughout the United States, including those located in New York, can download Defendants' App and/or purchase a subscription to use Defendants' App. (<u>See</u> Exh. 2.)

56. Although Defendants are located overseas, Defendants' Current Website is embedded with "geo meta tags" that are pointed to the United States, demonstrating that Defendants have intentionally targeted consumers in the United States, including consumers located in New York, to market and promote Defendants' App and to sell subscriptions for Defendants' App. (A copy of the meta tags embedded on the homepage of Defendants' Current Website, showing "United States" as the "geo place name" and "USA" and the "geo region," is attached as Exhibit 3.)

9

57. When Defendants changed the domain name for their website from the Infringing Domain to their Current Domain in 2019, they hired a New York City-based public relations firm to publicize the change.

58. The press-release that was issued to advise consumers of the change in domain names for Defendants' website contains a dateline stating that it was issued from New York. (A copy of the press release is attached as Exhibit 4.)

59. The 95-page user guide for Defendants' App, which can be downloaded from Defendants' Current Website, contains numerous references to New York City, including: (a) on pages 23-24, which shows a partial map of Manhattan, along with latitude and longitude coordinates for a location in Manhattan, to explain how the GPS tracker function works on Defendants' App; (b) on pages 25-26, which shows a partial map of Manhattan to explain how to review the SMS logs from an electronic device using on Defendants' App; (c) on pages 27-28, which shows a partial map of Manhattan to explain how to review the phone logs from an electronic device using on Defendants' App; (d) on page 29, which shows a partial map of Manhattan to explain how to review the MMS logs from an electronic device using on Defendants' App; and (e) on pages 39-40, which identify locations in "New York" and "Bronx" to explain how to review calendar entries retrieved from an electronic device using on Defendants' App. (A copy of the user guide for Defendants' App, downloaded from the website, is attached as Exhibit 5.)

60. The pictures and information in the user guide for Defendants' App that show addresses and locations in New York City are intended to target New York consumers and attract them to Defendants' App.

61. The pictures and information showing addresses and locations in New York City that are contained in the user guide for Defendants' App establish that Defendants' App was downloaded and used in New York on at least once occasion.

62. Upon information and belief, business records in Defendants' exclusive possession and control contain evidence of many more downloads of Defendants' App and subscription fees paid by persons located in New York.

AS AND FOR A FIRST CAUSE OF ACTION
(Trademark Infringement/False Designation of Origin and False Description)

63. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

64. Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), any person who, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale of any goods or services in a manner likely to cause confusion, or to cause mistake, or to deceive; or who, without the consent of the registrant, reproduces, counterfeits, copies or imitates a mark and applies such to advertisements intended to be used in commerce in connection with the sale of goods or services in a manner that is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

65. Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), any person who, in connection with any goods or services, uses in commerce any word, term, name, symbol, or device, or any combination that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

66. As described above, Defendants have used, and continue to use, the Infringing Name and the Infringing Domain to promote and market Defendants' App and to promote, market and sell subscription services to use Defendants' App via an interactive website accessible to consumers in New York and elsewhere.

67. Defendants' use of the Infringing Name and the Infringing Domain has caused and/or is likely to cause confusion and mistake in the minds of consumers as to the origin of Defendants' App.

68. Defendants' use of the Infringing Name and the Infringing Domain tends to and does falsely create the impression that Defendants' App is authorized, sponsored, or approved by Plaintiff, when it is not.

69. The acts of Defendants, as described above, infringed on Plaintiff's Mark and falsely represented the origin, sponsorship, or approval of Defendants' App in violation of § 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70. As a proximate result of the conduct taken by Defendants as described above, Plaintiff has suffered and will continue to suffer irreparable harm and damage to its business, goodwill, reputation, profits and the strength of Plaintiff's Mark.

71. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

72. The acts of infringement and dilution by Defendants have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

73. Plaintiff is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to statutory damages, compensatory damages, treble damages, disgorgement of profits, costs and attorneys' fees.

AS AND FOR A SECOND CAUSE OF ACTION
(Cybersquatting)

74. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

75. Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(d), any person who, without regard to the goods or services of the parties, has a bad faith intent to profit from a mark, and registers, traffics in, or uses a domain name that, in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark, shall be liable to the owner of the mark in a civil action.

76. Plaintiff is the owner of Plaintiff's Mark.

77. Plaintiff's Mark was distinctive prior to Ciuca's registration of the Infringing Domain.

78. The Infringing Domain is confusingly similar to and infringes upon Plaintiff's Mark.

79. Defendants have registered, trafficked in, and/or used the Infringing Domain with bad faith intent to profit from the Infringing Domain.

80. Defendants' use of the Infringing Domain in a manner that infringes on Plaintiff's Mark has been willful and intentionally or was undertaken with reckless or willful disregard of Plaintiff's rights.

### AS AND FOR A THIRD CAUSE OF ACTION
(Common Law Unfair Competition)

81. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

82. Defendants have intentionally and in bad faith appropriated Plaintiff's Mark with the intent of causing confusion, mistake, and deception as to the source of its goods and services or to otherwise wrongfully benefit from the infringement of Plaintiff's rights without due compensation.

83. Defendants' conduct, as described above, constitutes common law unfair competition under New York State law.

84. Defendants' conduct has been and is willful and intentional.

85. Plaintiff is suffering irreparable harm and damage to its business as a result of Defendants action, as described above, in an amount thus far not determined.

86. Plaintiff has no adequate remedy at law.

### JURY DEMAND

87. Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff demands relief as follows:

A. entry of a temporary restraining order, as well as preliminary and permanent injunctions, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, that enjoins Defendants and others acting in concert with them, from taking any actions, and aiding and

abetting the actions of others, that infringe upon Plaintiff's duly registered Mark or otherwise constitutes unfair competition with Plaintiff;

B. cancelling Defendants' registration of all domain names and disabling all of Defendants' website that are being used to infringe in Plaintiff's Mark, and/or causing the registrations of such domains to be transferred to Plaintiff;

C. at Plaintiff's election, either (i) awarding actual damages against Defendants as provided for under 15 U.S.C. § 1117(a); or (ii) requiring Defendants to account to Plaintiff for all profits resulting from Defendants' infringing activities and that such award of profits to Plaintiff be increased by the Court as provided for under 15 U.S.C. § 1117(a);

D. awarding Plaintiff punitive damages in a sum to be determined at trial on the basis of Defendants' deliberate and intentional infringement and unfair competition;

E. awarding Plaintiff its reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a), as well as the costs and disbursements of this action;

F. awarding Plaintiff prejudgment interest; and

G. such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 29, 2020

GREENBERG FREEMAN LLP

By: ___/s/ *Michael A. Freeman*___
Michael A. Freeman
110 East 59th Street, 22nd Floor
New York, New York 10022
(212) 838-3121
*Attorneys for Plaintiff*

## VERIFICATION

DAN PARISI, pursuant to 28 U.S.C. § 1746, states as follows:

1. I am the sole member and managing member of plaintiff Spy Phone Labs LLC, a New York limited liability company.

2. I have read the foregoing verified complaint and the factual statements contained therein are true and correct to the best of my information and belief, except for those statements made upon information and belief, as to which I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on December 29, 2020.

_____
DAN PARISI